# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **MITCHELL LEE** | ) | |
| | ) | **Case No. 3:24-cv-00520** |
| **v.** | ) | |
| | ) | |
| **COMISSIONER OF SOCIAL SECURITY** | ) | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge


## REPORT AND RECOMMENDATION

Plaintiff Mitchell Lee filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI of the Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 9) and memorandum in support (Docket No. 9-1), to which Defendant SSA has responded (Docket No. 12). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 10.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 9) be **DENIED**.

# I.     INTRODUCTION

On August 31, 2020, Plaintiff proactively filed an application for SSI. (Transcript of the Administrative Record (Docket No. 7) at 25.)[1] In his applications, Plaintiff asserted that, as of the alleged onset date of August 31, 2020,[2] he was disabled and unable to work due to arthritis and pain in fingers, hands, knees and back; extreme high blood pressure; chronic extreme asthma; blackouts; chronic obstructive pulmonary disease ("COPD"); and heart condition. (AR 63.) These claims were denied initially on May 17, 2021 and upon reconsideration on July 12, 2022. (AR 25.) On May 4, 2023, Plaintiff appeared with attorney Tara Sanders and testified at a telephone hearing conducted by ALJ Renee Andrews-Turner. (AR 39–61.) On June 1, 2023, the ALJ denied the claim. (AR 25–34.) On March 22, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1– 4.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

# II.     THE ALJ'S FINDINGS

In her June 1, 2023 unfavorable decision, the ALJ included the following enumerated findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.     The claimant has not engaged in substantial gainful activity since August 31, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[2] Plaintiff originally alleged an onset date of January 1, 2009. However, during the hearing on May 4, 2023, Plaintiff amended the onset date to the filing date, August 31, 2020. (AR 45.)

3.    The claimant has the following severe impairments: asthma, degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently stoop and climb ramps/stairs; occasionally kneel, crouch, crawl and climb ladders/ropes/scaffolds; avoid concentrated exposure to extreme temperatures, humidity, and hazards; avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on January 6, 1971, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from [August 31, 2020][3], through the date of this decision [June 1, 2023] (20 CFR 404.1520(g) and 416.920(g)).

(AR 27–34.)

---

[3] The ALJ appears to have erroneously included Plaintiff's original alleged onset date of January 1, 2009 in this portion of her decision.

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSIONS AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed

4

further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.    The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) he had not engaged in substantial gainful activity since the amended alleged onset date, which was also the filing date, and (2) his

5

impairments of "asthma" and "degenerative disc disease" were severe.[4] (AR 28.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28.) At step four, the ALJ determined that Plaintiff had the RFC to perform work with certain limitations. (AR 28–32.) At step five, the ALJ determined that Plaintiff could not perform past relevant work but could perform other work such as linen room attendant, stubber, and dryer attendant. (AR 32–33.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from January 1, 2009 through June 1, 2023, the date of the decision. (AR 34.)

## C. Plaintiff's Assertion of Error

Plaintiff sets forth three assertions of error: (1) the ALJ improperly developed the record; (2) the ALJ improperly evaluated Plaintiff's RFC; and (3) the ALJ improperly evaluated Plaintiff's disabling symptoms. (Docket No. 9-1 at 8–15.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

---

[4] The ALJ found that Plaintiff's inguinal hernia, fatty liver, and hypertension did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and were, accordingly, non-severe impairments. (AR 28.)

6

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's three assertions of error.

### 1. The ALJ's Development of the Record.

For his first assertion of error, Plaintiff argues that the ALJ failed to fully develop the record because there was insufficient medical evidence to determine whether Plaintiff was disabled. In particular, Plaintiff asserts that the record did not contain any opinion from a treating physician and that the matter should be remanded so the ALJ can consider a July 2023 function assessment that Plaintiff provided after the ALJ made her decision. (Docket No. 9-1 at 8–10.) Plaintiff concedes that he had the burden to provide a complete record in support of his claim and that an ALJ is not required to order a consultative examination prior to making a decision, but he nevertheless argues that "such evaluation would clarify the nature of [his] impairments, especially in light of the very limited record evidence." (*Id.* at 9.)

In response, the SSA argues that the ALJ reasonably determined that there was sufficient evidence in the record to determine whether Plaintiff was disabled and that Plaintiff has not shown an error otherwise. (Docket No. 12 at 3–6.) The SSA states that the ALJ did not have a heightened duty to develop the record in this instance because Plaintiff was represented by counsel at the hearing level and in this appeal. (*Id.* at 4.) As for Plaintiff's request that this matter be remanded for consideration of the July 2023 function assessment, the SSA argues that to do so would be improper because this evidence is not "new" and Plaintiff had no "good cause" for failing to present such evidence to the ALJ. (*Id.* at 5.)

7

An ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson*, 402 U.S. at 400–401). The ALJ must "ensur[e] that every claimant receives a full and fair hearing." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson*, 402 U.S. 389). However, the ALJ has discretion to determine whether additional evidence, such as additional testing or expert testimony, is necessary. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.")).

Here, the administrative record includes medical records from two of Plaintiff's providers: Nashville General Hospital and Neighborhood Health. (AR 354–683.) On December 23, 2019, Plaintiff was seen at the pulmonary clinic at Nashville General Hospital to establish care regarding his asthma. (AR 555–56.) He was assessed with "moderate persistent chronic asthma without complication" and was prescribed an inhaler. (AR 556.) He was then seen at Neighborhood Health on January 14, 2020 for asthma and hypertension (AR 492–97). His asthma was described as "mild persistent" and unchanged since a prior initial visit in April 2018. (AR 492.) He was seen again at Neighborhood Health on March 12, 2020 for hypertension and was described as "stable" with "no associated symptoms" and "no pertinent negatives." (AR 485–91.)

8

Later that year, on November 22, 2020, Plaintiff visited the emergency room at Nashville General Hospital for low back pain. (AR 557–70.) He reported difficulty walking but was discharged in "stable" condition. (AR 558, 570.) He returned to the same emergency room over one year later, on January 27, 2022, for chest pain that was described as "mild." (AR 605–20.) His labs were "reassuring with negative cardiac enzymes and EKG" and he was discharged in "stable" condition once again. (AR 619.) Later that year, on July 11, 2022, Plaintiff returned to Nashville General Hospital for more low back pain. (AR 580–90.) He had an x-ray examination of his lumbar spine, which showed "[s]purring of the endplates with disc space narrowing" and the presence of "degenerate facet arthropathy … at the L4-L5, L5-S1 level." (AR 643.) It was noted that there were "[l]umbar spondylitic changes without evidence." (AR 643.) The next year, Plaintiff visited the internal medicine clinic at Nashville General Hospital on February 7, 2023 for a "regular check up." (AR 667–71.) He was assessed as having hypertension, hyperlipidemia, and "moderate asthma without complication, unspecified whether persistent," all of which would be treated by medication. (AR 668–70.)[5]

Contrary to Plaintiff's assertions, the medical evidence in the record is not "scant." As Plaintiff himself argues, evidence in the record addresses his asthma and back issues. (Docket No. 9-1 at 10–11 (arguing that the RFC is incorrect because "pulmonary test[s] showed moderate obstruction and he used a rescue inhaler three times per week" and point to x-ray examinations to

---

[5] The administrative record includes medical records from other visits to Nashville General Hospital and Neighborhood Health from as early as October 2015 (AR 385–89). However, the majority of those medical records are dated prior to Plaintiff's onset date of August 31, 2020.

As discussed in more detail *supra*, the ALJ discussed four of Plaintiff's medical visits in her decision: (1) December 23, 2019 visit to Nashville General Hospital, (2) March 12, 2020 visit to Neighborhood Health, (3) July 11, 2022 visit to Nashville General Hospital, and (4) February 7, 2023 visit to Nashville General Hospital. (AR 30–31.)

show "abnormalities").) In other words, on the one hand, Plaintiff points to evidence in the record that he finds helpful and which he urges the Court to consider, and on the other hand, Plaintiff argues that there was not enough evidence in the record for the ALJ to decide in the first place. The Court finds Plaintiff's argument unconvincing. As set forth above, the record contains a considerable amount of evidence relating to Plaintiff's asthma and back issues. Accordingly, the ALJ was not required to obtain a consultative examination, and Plaintiff has failed to present any compelling argument otherwise.

Separately, neither is the Court persuaded by Plaintiff's arguments regarding his newly submitted evidence. Plaintiff provided two pieces of additional evidence to the SSA after the ALJ held the hearing in May 2023 and issued her decision in June 2023. The first was Plaintiff's medical records from an August 15, 2023 return visit to the internal medicine clinic at Nashville General Hospital, in which Plaintiff was again assessed as having hypertension, hyperlipidemia, and "moderate asthma without complication, unspecified whether persistent," all of which would be treated by medication. (AR 10–11) The second was a medical source statement dated July 10, 2023 from Ashlee Suddeath, a nurse at Neighborhood Health. (AR 20–21.) In this statement, Ms. Suddeath diagnosed Plaintiff with hypertension, asthma, and hyperlipidemia. (AR 20.) She opined, in part, that Plaintiff had no restrictions on his ability to lift, stand, or walk, but that he could never tolerate dust, smoke, or fume exposure. (AR 20.) She also opined that he suffered from moderate pain, which was occasionally severe enough to interfere with his attention or concentration. (AR 21.) She commented that he "may have additional limitations which are being evaluated by Nashville General Hospital PCP." (AR 21.)

In response to receiving these documents, the SSA stated as follows in its denial of Plaintiff's request for review:

You submitted medical evidence from Nashville Healthcare Center, 4 pages, dated August 15, 2023; and a medical source statement from Neighborhood Health, 3 pages, dated July 10, 2023. The Administrative Law Judge decided your case through June 1, 2023. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 1, 2023.

If you want us to consider whether you were disabled after June 1, 2023, you need to apply again. If you file a new claim for supplemental security income within 60 days after you receive this letter, we can use July 21, 2023, the date of you request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

(AR 2.)

Plaintiff now argues that remand under sentence six of 42 U.S.C. § 405(g) is warranted so that the ALJ can review the July 2023 function assessment "[i]n light of the scant amount of evidence in the record." (Docket No. 9-1 at 9–10.) Plaintiff does not make any arguments about the August 2023 medical records. However, for a court to order a remand under sentence six, the evidence must be both new and material, and there must have been good cause for not presenting it in the prior proceeding. *Foster*, 279 F.3d at 357. Evidence is "new" only if it was not in existence or was not available prior to the ALJ's decision. *Id.* Such evidence is "material" if there is a reasonable probability that the ALJ would have reached a different decision had the additional evidence been presented. *Id.* A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the hearing before the ALJ. *Id.*

Plaintiff has failed to demonstrate that remand is warranted. First, the July 2023 function assessment is not "new." Plaintiff could have obtained such an assessment at any time prior to the hearing and decision, but failed to do so. In addition, the function assessment is not "material" because there is no reasonable probability that the ALJ would have provided a different RFC based on the assessment. In fact, Ms. Suddeath opined that Plaintiff had relatively few restrictions, so the ALJ's consideration of this evidence likely would not change the RCF assessment. Plaintiff

11

has made no argument to the contrary. Finally, Plaintiff has not demonstrated any "good cause" for his failure to acquire and present this evidence to the ALJ at the hearing. Accordingly, there is no basis upon which to remand this matter pursuant to sentence six 42 U.S.C. § 405(g).

In sum, the ALJ's development of the record is supported by substantial evidence. For these reasons, the Court rejects Plaintiff's first assertion of error.

## 2. The ALJ's Evaluation of Plaintiff's RFC.

For his second assertion of error, Plaintiff contends that the ALJ did not properly formulate or explain the RFC. (Docket No. 9-1 at 10–12.) In particular, he asserts that the ALJ "mischaracterizes and selectively culls through the evidence" and fails to "account for the limitations stemming from [Plaintiff's] low back condition." (*Id.* at 10–11.) In short, Plaintiff challenges the sufficiency of the ALJ's assessment of his RFC, which is "the most a claimant can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

In her decision, the ALJ determined that Plaintiff had the RFC to perform medium work[6] with certain restrictions:

> [T]he claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently stoop and climb ramps/stairs; occasionally kneel, crouch, crawl and climb ladders/ropes/scaffolds;

---

[6] When discussing the RFC, the ALJ does not explicitly state that Plaintiff can perform "medium" work. However, the ALJ's description of the work that Plaintiff can perform aligns with the definition of "medium" work, which involves the occasional lifting of 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds; can require standing and walking as much as six hours during any given eight-hour workday; and can involve frequent stooping, grasping, holding, and turning of objects. 20 C.F.R. §§ 404.1567, 416.967. In addition, the ALJ later describes the work that Plaintiff can perform as "medium" work. (AR 33.) Further, both parties describe the level of work as "medium." (Docket No. 9-1 at 10–11; Docket No. 12 at 3, 6, 8.)

12

avoid concentrated exposure to extreme temperatures, humidity, and hazards; avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation.

(AR 28.) Plaintiff argues that this RFC assessment fails to account for his severe asthma and other lung issues, low back conditions, difficulty walking, and easy fatigability. (Docket No. 9-1 at 10–12.) He asserts that his documented medical issues are inconsistent with an RFC for medium work and that the ALJ "cherry picked" certain evidence from the record that would support this RFC. (*Id.*) He believes that the medical evidence supports further limitations, and this matter should therefore be remanded. (*Id.*)

In response, the SSA argues that substantial evidence supports the ALJ's determination of Plaintiff's RFC. (Docket No. 12 at 6–8.) The SSA contends that Plaintiff's assertion that the ALJ selectively cited evidence is "nothing more than an improper request for this Court to reweigh the evidence in [Plaintiff's] favor." (*Id.* at 6.) According to the SSA, there are medical records showing "normal findings" that Plaintiff ignores, all while emphasizing "select treatment notes" that would support his argument. (*Id.* at 6–7.) The SSA notes that Plaintiff does not challenge the ALJ's evaluation of a State agency consultant on whose findings the ALJ relies. (*Id.* at 7–8.)

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any

13

inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The RFC opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). *See also Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600–01 (N.D. Ohio 2013). Because medical opinions are such an important piece of evidence to support a claimant's RFC, ALJs have been cautioned against relying on their own expertise in drawing RFC conclusions from raw medical data. *See id.* This sentiment is further supported by the SSA regulations, which state that an ALJ must "explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 416.920c(b)(2).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these

14

"minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was support by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

In making the RFC finding, the ALJ relied on medical opinions from State agency consultants Dr. Rita Misra (AR 62–79) and Dr. James M. Lewis (AR 84–145).[7] The ALJ found the opinions of Dr. Misra not persuasive because Dr. Misra found that there was insufficient evidence to evaluate Plaintiff's claims, but the ALJ found the opinions of Dr. Lewis persuasive. (AR 31–21.) In his opinions, Dr. Lewis concluded that Plaintiff could perform a range of medium work. He found that Plaintiff could life 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours each in an eight-hour workday; frequently climb ramps and stairs, balance, stoop, and crouch; and occasionally climb ladders, ropes, and scaffolds, kneel, and crawl. (AR 92–95, 107–10, 122–26, 138–42.) As the ALJ explained, Dr. Lewis reviewed Plaintiff's medical evidence to support these RFC findings. (AR 31–32.) That evidence showed that, with respect to his asthma, Plaintiff had "moderate, persistent, controlled asthma with occasional acute asthma exacerbations and pulmonary function studies" and "moderate obstruction with good bronchodilator response." (AR 32.) The evidence also showed that, with respect to his degenerative disc disease, Plaintiff had "lumbar spondylitic changes," "spurring of the endplates with disc space narrowing and degenerate facet arthropathy present at the L4-L5, L5-S1 level,"

---

[7] There are six state agency medical opinions on the record: : (1) Dr. Misra's May 13, 2021 opinion regarding Plaintiff's SSI claim (AR 62–70); (2) Dr. Misra's May 17, 2021 opinion regarding Plaintiff's DIB claim (AR 71–79); (3) Dr. Lewis's June 29, 2022 opinion regarding Plaintiff's SSI claim (AR 84–98); (4) Dr. Lewis's June 29, 2022 opinion regarding Plaintiff's DIB claim (AR 99–113); (5) Dr. Lewis's July 9, 2022 opinion regarding Plaintiff's DIB claim (AR 114–29); and (6) Dr. Lewis's July 9, 2022 opinion regarding Plaintiff's SSI claim (AR 130–45).

and "decreased range of motion on the spine," but there was "no evidence" that Plaintiff's spine had been "severely limited." (AR 32.) The ALJ found Dr. Lewis's opinions to be persuasive because they were generally consistent with the evidence, which demonstrated that Plaintiff's physical impairments had not been disabling. (AR 32.)

The ALJ also relied on Plaintiff's testimony from the May 4, 2023 hearing when determining Plaintiff's RFC. (AR 29–30.) With respect to his functional abilities, Plaintiff testified that his back pain impacts his ability to stand and sit, and that he could not carry an object over five pounds. With respect to his activities, Plaintiff testified that he does not shop for himself, do laundry or other household chores, or go out to eat; that he leaves the house only to go to doctor's appointments; but that he is able to dress himself. With respect to his medical history, he testified that has been diagnosed with COPD, has consistent shortness of breath, takes three medications for lung issues, previously fell in the bath, and has not had any x-rays or tests since July 2022. The ALJ found that this testimony concerning the intensity, persistence and limiting effects of Plaintiff's symptoms was not entirely consistent with the medical evidence and other evidence in the record. (AR 30.)

Finally, the ALJ reviewed Plaintiff's medical records and discussed four visits in detail. (AR 30–31.) First, during Plaintiff's December 23, 2019 visit to Nashville General Hospital, he was assessed as having "moderate persistent chronic asthma without complication." (AR 30 (citing AR 556).) Second, during his March 12, 2020 visit to Neighborhood Health, he was noted to be stable with no associated symptoms; moderately active with exercise, including walking; negative for back pain; and normal for respiration. (AR 31 (citing AR 485–91).) Third, during his July 11, 2022 visit to Nashville General Hospital, Plaintiff had an x-ray taken of his lumbar spine, which showed lumbar spondylitic changes. (AR 31 (citing AR 643).) Fourth, and finally, during his

16

February 7, 2023 visit to Nashville General Hospital, Plaintiff was noted to have shortness of breath or wheezing and was prescribed albuterol 90; reported coughing at night, especially when it was cold; and was noted to have no significant abnormalities. (AR 31 (citing AR 667–71).)

In all, the ALJ found that these treatment records showed "milder symptoms and greater sustained capacity" than what Plaintiff described during his hearing testimony. (AR 31.) Accordingly, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent" with the medical record evidence; that Plaintiff's subjective complaints and alleged limitations were "not fully persuasive"; and that Plaintiff retained the capacity to perform work activities with the described RFC limitations. (AR 31.)

The Court finds that substantial evidence sufficiently demonstrates that the ALJ's RFC adequately accounted for all limitations that the ALJ found credible. Importantly, the RFC finding is in line with that of reviewing state agency physician Dr. Lewis. An ALJ must consider the medical findings of state agency medical consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1) (2022). *See also Miller*, 811 F.3d at 834 ("State agency medical consultants ... are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.") Here, the reviewing physician found that Plaintiff could perform a range of medium work with certain restrictions. (AR 92–95, 107–10, 122–26, 138–42.) The ALJ's RFC determination echoes these findings.

Although Plaintiff points to medical record evidence that could support a more limited RFC, it is not this Court's job to determine if there is evidence in favor of Plaintiff's position that he is not able to perform medium work with the restrictions included by the ALJ. *See Garner*, 745 F.2d at 387 ("This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."). This Court is limited to determining whether substantial evidence

17

supported the ALJ's RFC. That substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. Here, there was evidentiary support in the record – including, importantly, the findings of state agency consultant Dr. Lewis – for the ALJ's RFC finding. Given that the ALJ's RFC determination is properly within the permitted "zone of choice," the Court concludes that the RFC is supported by substantial evidence. For these reasons, the Court rejects Plaintiff's second assertion of error.

### 3. The ALJ's Evaluation of Plaintiff's Disabling Symptoms.

For his third and final assertion of error, Plaintiff claims that the ALJ "failed to state with any specificity the evidence upon which she relies to find [Plaintiff's] symptoms not disabling." (Docket No. 9-1 at 13.) Plaintiff argues that he offered "uncontroverted" testimony at the hearing about his ability to perform certain physical activities, undertake daily activities, complete household tasks, and more, but the ALJ discounted his allegations in a "perfunctory" manner. (*Id.*) He asserts that the ALJ focused primarily on "objective evidence" and impermissibly cherry-picked evidence to support her conclusions. (*Id.* at 14.) Plaintiff further argues that the ALJ impermissibly considered his drinking and incorrectly referred to him as a "moderate drinker." (*Id.* at 14–15.) Finally, Plaintiff contends that the ALJ did not adequately consider his inability to afford treatment or medication. (*Id.* at 15.)

In response, the SSA argues that the ALJ reasonably evaluated Plaintiff's subjective complaints. (Docket No. 12 at 8–10.) The SSA asserts that the ALJ considered Plaintiff's treatment regimen and daily activities in addition to the objective evidence and that the ALJ properly considered Plaintiff's ability to obtain treatment and lack of insurance.

"An individual's statements as to pain or other symptoms will not alone establish that [he is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted) (cleaned up). Rather, when an individual alleges impairment-related symptoms,[8] the ALJ must evaluate those symptoms using a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important.[9] If an individual's statements are *consistent* with the

---

[8] A "symptom" is defined as an individual's own description or statement of his impairment. SSR 16-3p, 2017 WL 5180304, at *2.

[9] The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements regarding the limiting effects of his alleged symptoms. 1996 WL 374186 at *3 (July 2, 1996). Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there is no substantive change in the ALJ's analysis, and the case law pertaining to credibility evaluations under SSR 96-7p remains applicable. *See Dooley*

19

objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if an individual's statements are *inconsistent* with the objective medical evidence, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

---

*v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *see also Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at *6 (W.D. Ky. April 23, 2018) ("The analysis under SSR 16-3p otherwise is identical to that performed under SSRI 96-7p."). As noted by a sister district court, reviewing courts have therefore largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

The Court finds that the ALJ's determination concerning the consistency of Plaintiff's allegations is supported by substantial evidence. *See Walters*, 127 F.3d at 531 ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). In her decision, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effect of his symptoms were "not entirely consistent" with the medical evidence and other evidence in the record. (AR 30.) The ALJ detailed Plaintiff's hearing testimony and compared that with information included in Plaintiff's medical records, from which she concluded that the medical treatment records "suggest milder symptoms and greater sustained capacity than described in testimony." (AR 31.) On that basis, the ALJ found that Plaintiff's statements about his symptoms and limitations were "not fully persuasive" and that Plaintiff "retain[s] the capacity to perform work activities with the limitations set forth" in the RFC. (AR 31.) Although the ALJ could have made a more robust articulation about the link between Plaintiff's statements and the evidence, the Court nevertheless finds that the ALJ built a sufficiently "accurate and logical bridge" to make clear the rationale for discounting Plaintiff's credibility. *See Tucker v. Comm'r of Soc. Sec.*, No. 1:22-cv-00001, 2023 WL 309392, at *7 (M.D. Tenn. Jan. 18, 2023) ("[E]ven though [t]he ALJ is not required to address every piece of evidence or testimony presented, … [s]he must provide a logical bridge between the evidence and [her] conclusions.") (internal quotations omitted) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio Mar. 1, 2011)); *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, at *4 (6th Cir. Feb. 2, 1999) (table) ("The ALJ's decision must 'follow an orderly pattern and show clearly how specific evidence leads to a conclusion.'") (quoting SSR 82-62).

Separately, the Court finds no error in the ALJ's mention of Plaintiff's drinking. Plaintiff argues that the ALJ's "discussion of his prior alcoholism without further analysis serves only to

malign his character." (Docket No. 9-1 at 15.) However, in her decision, the ALJ referenced Plaintiff's drinking habits only once when she discussed his December 23, 2019 visit to Nashville General Hospital: "The claimant admitted to being a moderate drinker who drinks every day[.]" (AR 30 (citing AR 555).) The ALJ did not refer to Plaintiff as an alcoholic or discuss his "prior alcoholism." Nor did the ALJ discuss Plaintiff's drinking when determining his credibility. Plaintiff has failed to point to any portion of the ALJ's decision in which she stated or implied that Plaintiff's drinking impacted his credibility. Further, although there is evidence in the record that Plaintiff was not drinking, the ALJ is not obligated to reference every portion of the record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). For these reasons, the Court finds that the ALJ did not improperly consider Plaintiff's drinking.

Finally, with respect to Plaintiff's insurance and ability to access treatment, during the hearing, Plaintiff confirmed that he does not have health insurance and answered "yes" when asked by his counsel if not having insurance has "limited" his "ability to get treatment." (AR 46–47.) His counsel also referenced his lack of insurance as a reason for not having any additional x-ray imagining in the six months prior to the hearing. (AR 51.) Plaintiff provided no further detail about how his lack of insurance impacted his ability to obtain treatment or medication.

In her decision, the ALJ explicitly referenced Plaintiff's testimony about insurance. (AR 29 ("The claimant testified about not having medical insurance and that this limited the ability to receive medical treatment.").) Plaintiff confusingly argues both that the ALJ "did not consider" his inability to afford treatment, and that the ALJ should have included a more "robust discussion" about his inability to afford treatment. (Docket No. 9-1 at 15.) Regardless of which argument Plaintiff makes, both fail for several reasons. First, the ALJ did consider Plaintiff's inability to

afford treatment. Second, Plaintiff has provided the Court with no applicable case law or statutory law to show that the ALJ's consideration of his inability to afford treatment needed to be more "robust." Plaintiff cites to *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 919 (M.D. Tenn. 2017), but that case does not comment on the level of detail with which an ALJ must discuss a claimant's lack of insurance of ability to afford treatment. Instead, the *Hudson-Kane* case discussed whether a claimant's noncompliance with treatment because of an inability to afford medication could constitute good reason for discounting the opinion of the claimant's treating physician. *Id.* at 918–19 ("Despite this evidence, and despite conceding that Plaintiff's noncompliance with her treatment was 'for financial reasons' … , the ALJ nevertheless used Plaintiff's poverty as basis for rejecting [the doctor's] opinion, which the Court finds unreasonable."). Finally, Plaintiff had the chance but failed to detail to the ALJ how his lack of insurance has impacted his ability to afford treatment.

In sum, given the support provided in the decision and the significant deference afforded to the ALJ's credibility determination, the Court finds no error in the ALJ's determinations. *See Hernandez*, 644 F. App'x at 476. For these reasons, the Court rejects Plaintiff's third assertion of error.

## V.    RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 9) be **DENIED** and the SSA's decision be **AFFIRMED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

24